## FIRST AMERICAN CASINO CORP., Plaintiff,

v.

## EASTERN PEQUOT NATION a/k/a Paucatuck Eastern Pequot Indian Tribe, Defendant.

### No. 3:97CV846 (RNC).

United States District Court, D. Connecticut.

May 10, 2000.

</div>

C. George Kanabis, Matthew G. Berger, Kanabis & Houle, New London, CT, for plaintiff.

Robert D. Tobin, Rita Provatas, Tobin, Carberry, O'Malley, Riley & Selinger, New London, CT, John M. Peebles, Monteau, Peebles, Evans & Marks, Washington, DC, for defendant.

## RULING AND ORDER

CHATIGNY, District Judge.

This is a breach of contract case that is here on removal from the Connecticut Superior Court. The case involves a gaming management contract entered into by the defendant Indian tribe, which would like to conduct casino operations pursuant to the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701–2721, but has not yet attained formal federal recognition. In response to an order to show cause [doc. # 83] why the action should not be remanded for lack of subject matter jurisdiction, defendant contends that the court has federal question jurisdiction because plaintiff's breach of contract claims are grounded in IGRA. Defendant also contends that IGRA completely preempts state laws with regard to Indian gaming. *See* Def.'s Mem.Supp. Subject Matter Jurisdiction [doc. # 87] (hereinafter "Def.'s Mem.") at 1–2.[1] Plaintiff counters that the case must be remanded because defendant has not attained formal federal recognition and, accordingly, IGRA does not apply. Pl.'s Reply [doc. # 88] at 1–2. After careful consideration of the issues raised by the parties' submissions, I

---

1. Defendant does not claim that the court has subject matter jurisdiction based on diversity of citizenship. *See* Def.'s Mem. at 5; *see also* Order to Show Cause at 1–2.

conclude that subject matter jurisdiction is lacking. Accordingly, the action must be remanded pursuant to 28 U.S.C. § 1447(c).

## I. Background

Plaintiff commenced this action in Superior Court claiming breach of contract. The complaint alleged that plaintiff had entered into a written agreement with defendant, an Indian tribe recognized by the State of Connecticut, which allegedly gave it the exclusive right to finance, develop, and manage a gaming enterprise on defendant's reservation. The complaint alleged that defendant was negotiating with third parties to replace plaintiff in violation of the agreement. The complaint sought injunctive relief and damages.

A copy of the parties' agreement was attached to the Superior Court complaint. It is clear from the terms of the agreement that the parties undertook to comply with the requirements of IGRA and intended to submit the agreement to the National Indian Regulatory Commission ("NIGC") for approval pursuant to IGRA.

IGRA's stated purposes are to provide a statutory basis for the operation and regulation of gaming by "Indian tribes." 25 U.S.C. § 2702(1)–(2); *see Seminole Tribe v. Florida,* 517 U.S. 44, 48, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). The statute defines the term "Indian tribe" to include "any Indian tribe ... which (A) is recognized as eligible by the Secretary [of the Interior] for the special programs and services provided by the United States to Indians because of their status as Indians, and (B) is recognized as possessing powers of self-government." 25 U.S.C. 2703(5). Defendant has not been acknowledged as an Indian tribe by the federal government. *See* Def.'s Mem. at 2, 10; *see also State v. Sebastian,* 243 Conn. 115, 117, 701 A.2d 13 (1997).

Defendant removed the case to this court without objection. A hearing was held on plaintiff's motion for a preliminary injunction and the motion was denied. In due course, defendant filed a motion for summary judgment. Before ruling on the merits of the motion, the court ordered defendant to show cause why the action should not be remanded for lack of subject matter jurisdiction. The jurisdictional issue has been briefed by both parties and is ripe for decision.[2].

## II. Discussion

Defendant has the burden of demonstrating that removal was proper. *See United Food & Commercial Workers Union, Local 919 v. CenterMark Properties Meriden Square, Inc.,* 30 F.3d 298, 301 (2d Cir.1994). "[F]ederal courts construe the removal statute narrowly, resolving any doubts against removability." *Somlyo v. J. Lu–Rob Enterprises, Inc.,* 932 F.2d 1043, 1045–46 (2d Cir.1991).

Under the well-pleaded complaint rule, a state court complaint may not be removed to federal court on the ground that it involves a federal question unless the federal question is presented on the face of the plaintiff's properly pleaded complaint. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Removal in anticipation of a federal defense, including the defense of preemption, is not proper. *See Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 10, 12, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

A. *Plaintiff's Breach of Contract Claims Do Not Require Proof that the Parties' Agreement Has Been Approved Pursuant to IGRA*

Defendant contends that plaintiff's Superior Court complaint presents a feder-

---

**2.** Defendant's motion for summary judgment has been denied without prejudice to renewal pending a determination of whether the court has subject matter jurisdiction.

al question, and was therefore properly removed, because the complaint alleges an agreement whose validity depends on whether it has been approved pursuant to IGRA. Defendant states that "[w]ithout such approval, the contract is ineffective both according to its terms and as a matter of federal law." Def.'s Mem. at 9.

Defendant's argument that without IGRA approval the contract is ineffective according to its terms is based on section 2.6 of the agreement, which defines the "Effective Date" to mean the date on which IGRA approval is obtained. However, the provision of the agreement that was placed in issue by the claims presented in plaintiff's Superior Court complaint became effective the day the agreement was signed.[3] Thus, plaintiff could prevail on its breach of contract claims without proving that the agreement had been approved pursuant to IGRA, unless something in IGRA (or some other federal law) precluded it from doing so.[4]

Defendant correctly points out that IGRA requires gaming management contracts to be approved by the Chairman of the NIGC. However, defendant's argument mistakenly assumes that IGRA applies to the parties' agreement. IGRA does not apply because defendant has not attained formal federal recognition and therefore is not an "Indian tribe" within the meaning of IGRA. Unless and until defendant ob-

tains federal acknowledgment, its activities are not regulated by IGRA.[5]

### B. *Plaintiff's Claims Are Not Completely Preempted by IGRA*

Defendant next contends that plaintiff's Superior Court complaint was removable because IGRA completely preempts the field of regulating Indian gaming. Under the complete preemption doctrine, a complaint alleging only a state cause of action is removable if a federal statute so completely preempts a particular area that any complaint raising claims in that area is deemed to be federal in character. *Metropolitan Life*, 481 U.S. at 63–64, 107 S.Ct. 1542. In such a case, the statute's "extraordinary pre-emptive power" not only provides a federal defense to the state common law complaint but "converts [it] into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* at 65, 107 S.Ct. 1542. Courts must be "reluctant" to find that a statute has such "extraordinary pre-emptive power," and will not do so unless "Congress has clearly manifested an intent to make causes of action ... removable to federal court." *Id.* at 65–66, 107 S.Ct. 1542; *see also id.* at 68, 107 S.Ct. 1542 (Brennan, J., concurring) ("In future cases involving other statutes, the prudent course for a federal court that does not find a *clear* congressional intent to create removal jurisdiction will be to remand the case to state court.").

---

3. The pertinent section is 3.2, which provides: "From and after the date of execution until this Agreement expires or is terminated ..., the Tribe covenants and agrees not to enter into any agreement with any other person or entity respecting gaming on lands of the [defendant], unless [plaintiff] fails to exercise its right of first refusal...."

4. Defendant's reliance on *Marcus v. AT & T Corp.*, 138 F.3d 46 (2d Cir.1998) is unavailing because the breach of warranty claim in that case was governed by tariffs AT & T had filed pursuant to the Federal Communications Act.

Such tariffs constitute federal law. *See id.* at 55–56.

5. As noted in the text, the parties' agreement explicitly invokes IGRA and undertakes to comply with IGRA's requirements. It is well settled, however, that "no action of the parties can confer subject-matter jurisdiction upon a federal court." *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982).

The Supreme Court has found complete preemption in only three areas: claims alleging violations of contracts between an employer and a labor organization are completely preempted by § 301 of the Labor Management Relations Act ("LMRA"), *see Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists*, 390 U.S. 557, 558, 560, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); claims to obtain benefits provided by an employee benefit plan regulated by the Employee Retirement Income Security Act ("ERISA") are completely preempted by § 502(a) of ERISA, *see Metropolitan Life*, 481 U.S. at 62–63, 65–67, 107 S.Ct. 1542; and aboriginal land claims by Indian tribes arise under federal law for purposes of 28 U.S.C. § 1331 and § 1362, *see Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666–70, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974).

The issue here is whether defendant has shown a clear congressional intent in IGRA to completely preempt plaintiff's state law claims. Two cases from the Eighth Circuit indicate that IGRA completely preempts the field of regulating Indian gaming when the statute applies.

*See Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102 (8th Cir.), *cert. denied*, 527 U.S. 1039, 119 S.Ct. 2400, 144 L.Ed.2d 799 (1999); *Gaming Corp. of America v. Dorsey & Whitney*, 88 F.3d 536 (8th Cir.1996). However, both cases also indicate that IGRA has no such power if it does not apply.[6] This is consistent with the Supreme Court's complete preemption precedents, which show that a state law claim is not preempted by federal law unless the allegedly preemptive federal law applies. Thus, a claim is not preempted by § 301 of the LMRA unless it involves interpretation of a collective bargaining agreement; a claim is not preempted by § 502(a) of ERISA unless it involves an ERISA-regulated employee benefit plan; and an aboriginal land claim does not arise under federal law unless the Indian tribe's assertion of aboriginal rights is "not insubstantial." *Oneida Indian Nation*, 414 U.S. at 677, 94 S.Ct. 772.

Because IGRA's text unambiguously limits its scope to gaming by tribes that have attained federal recognition, the statute does not apply to defendant's gaming-

---

**6.** In *Gaming Corp.*, casino management companies sued a law firm in state court for fraud and breach of fiduciary duty in connection with gaming license proceedings involving a federally recognized tribe. *Gaming Corp.*, 88 F.3d at 539–40. The law firm removed the case to federal district court. The district court dismissed some of the claims and remanded the rest to state court on the ground that no federal question remained. On review of that order, the Eighth Circuit decided that IGRA's comprehensive regulatory scheme completely preempts the field of regulating gaming activities on Indian lands. *See id.* at 542–48. In *Missouri ex rel. Nixon*, the Eighth Circuit revisited the issue of IGRA's preemptive power. *Missouri ex rel. Nixon*, 164 F.3d at 1108–09. In that case, the State of Missouri brought suit in state court to enjoin a federally recognized Indian tribe in Idaho from conducting an Internet lottery with residents of Missouri in violation of Mis-

souri law. *See id.* at 1104–05. The case was removed based on federal question jurisdiction and the district court denied a motion to remand. *See id.* at 1104–05, 1108. On review of the order denying the motion to remand, the Eighth Circuit decided that whether IGRA preempted the state law claims so as to provide the district court with subject matter jurisdiction depended on whether the lottery was being conducted "on Indian lands" within the meaning of IGRA. *Id.* at 1108. The court stated:

> If the Tribe's lottery is being conducted on its lands, then the IGRA completely preempts the State's attempt to regulate or prohibit. But if the lottery is being conducted on Missouri lands, the IGRA does not preempt the state law claims—indeed, it does not even appear to provide a federal defense—and the case must be remanded to state court.

*Id.* at 1109 (citing 25 U.S.C. § 2710(d)(1)).

related activities. *See Passamaquoddy Tribe v. Maine,* 75 F.3d 784, 792 n. 4 (1st Cir.1996) ("[IGRA] has no application to tribes that do not seek and attain formal federal recognition.").[7] Accordingly, plaintiff's state law claims are not completely preempted by IGRA.

### C. Defendant's Reference to 25 U.S.C. § 81

Defendant states in a footnote: "The present action on its face involves a contract to conduct gaming on Indian lands. In the absence of IGRA, 25 U.S.C. § 81 would require approval of such contracts regardless of the status of the tribe. Contracts without such approval are void. 25 U.S.C. § 81 like 25 U.S.C. § 177 makes no distinction between recognized and non-recognized tribes." Def.'s Mem. at 19 n. 8 (citing *Golden Hill Paugussett Tribe of Indians v. Weicker,* 39 F.3d 51 (2d Cir. 1994)). In light of this footnote, it is necessary to consider whether plaintiff's claims are completely preempted by 25 U.S.C. § 81.[8]

25 U.S.C. § 81 provides in pertinent part:

No agreement shall be made by any person with any tribe of Indians ... for the payment or delivery of any money or other thing of value, ... in consideration of services for said Indians relative to their lands ... unless such contract or agreement be executed and approved as follows:

. . . .

Second. It shall bear the approval of the Secretary of the Interior and the Commissioner of Indian Affairs indorsed upon it.

Just as the preemptive force of IGRA depends on whether the statute applies to the gaming at issue, plaintiff's state law claims are not completely preempted by § 81 unless defendant is a "tribe of Indians" within the meaning of that statute. Only one case has been found that addresses the issue whether a tribe that has not been federally recognized is covered by § 81. In *Western Shoshone Bus. Council ex rel. Western Shoshone Tribe v. Babbitt,* 1 F.3d 1052 (10th Cir.1993), an Indian tribe that was not federally recognized appealed a decision of the Department of the Interior that a legal services contract between the tribe and a law firm

---

7. Defendant's reliance on *Gaming Corp.* and *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians,* 63 F.3d 1030 (11th Cir.1995), *see* Def.'s Mem. at 16–18 & n. 7, is misplaced because the tribes in those cases are federally recognized. *See Gaming Corp.,* 88 F.3d at 539; *Tamiami Partners,* 63 F.3d at 1031 n. 1. Here, in contrast, we are concerned with a state recognized tribe that would like to be able to engage in IGRA-regulated gaming activities but has not yet attained federal recognition. Defendant asserts that federal recognition is "just one step in a multiple step process" and that its lack of federal recognition does not deprive the court of subject matter jurisdiction. Def.'s Mem. at 19. However, defendant points to no evidence of congressional intent to completely preempt the field of regulating gaming by Indian tribes that have not attained federal recognition,

much less the clear evidence required to support a finding of complete preemption.

8. The Ninth Circuit has indicated that § 81 completely preempts the common law with regard to contracts falling within the scope of the statute. *See A.K. Management Co. v. San Manuel Band of Mission Indians,* 789 F.2d 785, 789 (9th Cir.1986) ("[I]t is doubtful that general contract principles apply to an agreement subject to 25 U.S.C. § 81 (1982) .... [Bureau of Indian Affairs ("BIA") ] approval is an absolute prerequisite to the enforceability of the contract.... Accordingly, we find that general contract principles do not impose a duty on the Band to seek BIA approval of the Agreement."); *see also id.* at 789 n. 10 ("AK relies on general contract principles, when section 81 provides explicit statutory authority to the contrary.") (citing 1 A. Corbin, *Corbin on Contracts* § 7 (1960)).

did not require approval of the Bureau of Indian Affairs ("BIA") pursuant to § 81. *Western Shoshone Bus. Council*, 1 F.3d at 1054. The Acting Area Director of the BIA had determined that the contract was between private parties because the tribe was not federally recognized, and the Interior Board of Indian Appeals ("IBIA") had affirmed that decision. *See id.* Since the "IBIA is the final authority for the Department of the Interior on administrative actions by BIA officials," *Id.* at 1054, the tribe appealed the decision to the district court under the Administrative Procedures Act, 5 U.S.C. §§ 701–706. *See id.* at 1054–55. The Tenth Circuit held that a non-federally recognized tribe is "not within the zone of interests protected or regulated by § 81" and does not have standing to bring such an administrative appeal. *See id.* at 1056.[9] I agree with the Tenth Circuit's reasoning and conclude that a tribe lacking federal recognition is not a "tribe of Indians" within the meaning of § 81. Since § 81 does not apply, it does not completely preempt plaintiff's state law claims.[10]

### III. Conclusion

Because the court lacks subject matter jurisdiction, the case is hereby remanded to the Superior Court for the Judicial District of New London pursuant to 28 U.S.C. § 1447(c).

So ordered.

---

**9.** The Western Shoshones argued that they should be regarded as a recognized tribe for purposes of § 81 because they met the general test of tribal status used under the Nonintercourse Act, 25 U.S.C. § 177, which, like § 81, refers to any "tribe of Indians" without defining the term "Indian tribe." Defendant, by citing the *Golden Hill Paugussett* case and § 177, appears to be alluding to the same point. The Tenth Circuit rejected that approach to construing the statute on the ground that "the limited circumstances under which ad hoc judicial determinations of recognition were appropriate have been eclipsed by federal regulation." *Western Shoshone Bus. Council*, 1 F.3d at 1056 (citing 25 C.F.R. pt. 83 and 25 U.S.C. §§ 1a, 2). Under the present regulatory scheme, the Department of the Interior is required to publish and update a list of Indian tribes that are recognized by the federal government and receiving services from the BIA. The Western Shoshone did not appear on that list. In the court's view, their absence from that list was "dispositive." *Id.* at 1057.

**10.** Defendant contends that permitting plaintiff to pursue its claims in state court would "disturb and disarrange the purposes of IGRA." Def.'s Mem. at 18. Policy arguments are no substitute for the clear evidence of congressional intent required to support a finding that federal law completely preempts state law. Moreover, there is no reason to believe that state court adjudication of plaintiff's state law claims will have any adverse impact on the interests protected by IGRA.