CHEROKEE NATION OF OKLA-HOMA, on behalf of all its members, Plaintiff,

v.

Gale NORTON, in her official capacity as Secretary of Interior of the United States Department of Interior; Neal McCaleb, in his capacity as Assistant Secretary of the Department of the Interior; and the Delaware Tribe of Indians, as an indispensable party pursuant to Federal Rule of Civil Procedure 19, Defendants.

No. 98–CV–903–H.

United States District Court, N.D. Oklahoma.

Dec. 20, 2002.

---

Julian Kroh Fite, David Alan Mullon, Jr., Janice Walters Purcell, Cherokee Nation of Oklahoma Division of Law & Justice, Tahlequah, OK, F. Browning Pipestem, Dena LaMoyne Silliman, F. Browning Pipestem & Associates, Norman, OK, James Hamilton, William J. Mertens, Wilson K. Pipestem, Swidler & Berlin Chartered, Lloyd B. Miller, Sonosky Chambers Sachse Miller & Munson, Anchorage, AK, for Plaintiff.

Phil Pinnell, Loretta F. Radford, Tulsa, OK, Rollin Anthony Rogers, US Department of Justice Environment & Natural Resources Washington, DC, Barbara Coen, US Dept of Interior Division of Indian Affairs, Washington, DC, for Defendant.

## ORDER

HOLMES, District Judge.

This matter comes before the court on an appeal by Plaintiff Cherokee Nation of Oklahoma (the "Cherokee") of a decision by the Secretary of Interior (the "Secretary") in 1996 to withdraw a letter issued by an official of the Department of Interior (the "Department") in 1979 (the "1979 letter"). The effect of such withdrawal was to re-establish certain dealings between the United States and the Delaware Tribe of Indians (the "Delaware").

### I

On July 23, 2002, this Court entered an order sustaining the Secretary's decision to retract the 1979 letter (the "Order"). The basis for this decision is set forth fully in the Order, which the Court hereby incorporates herein by reference. In sustaining the Secretary's decision to retract the 1979 letter, the Court also sustained the Secretary's decision to return to the *status quo ante* prior to the issuance of the 1979 letter. However, the Court raised the question whether the Secretary's final decision on September 27, 1996, which included a statement that the Delaware is a tribal entity recognized and eligible for funding, went beyond a mere return to the *status quo ante* and actually announced a

new substantive policy. In the Order, the Court explained this as follows:

> At the outset, the Court notes that the action by the Secretary at issue here may involve more than the mere retraction of the 1979 letter. Specifically, the notice dated September 27, 1996, provides in applicable part as follows:
>
>> ... the Assistant Secretary hereby retracts the letter of May 24, 1979. The notice of proposed decision, 61FR33534, is hereby made final. Notice is hereby given that the Delaware Tribe of Indians is a tribal entity recognized and eligible for funding and services from the Bureau of Indian Affairs by virtue of its status as an Indian tribe.
>
> Thus, the Assistant Secretary first retracted the 1979 letter and, second, declared the Delaware Tribe a "recognized" tribal entity, "eligible for funding and services from the Bureau ... by virtue of its status as an Indian tribe." Clearly, the former of these actions retracts the 1979 letter and .restores the relationship between the Department and the Delaware to the *status quo ante*. The latter of these actions, however, potentially may constitute a declaration of new substantive policy. The Court will address each of these actions in turn.
>
> \*   \*   \*   \*   \*   \*
>
> As noted previously, the Secretary's notice issued September 27, 1996, arguably encompasses two decisions: first, a decision to retract the 1979 letter and, second, a decision to declare a new policy with respect to the status of the Delaware Tribe and relations between the Delaware Tribe and the United States. As stated above, the Court hereby sustains the Secretary's decision to retract the 1979 letter and thereby to restore the *status quo ante*. The question becomes whether the Secretary's notice on September 27, 1996, also effected a substantive change in the *status quo ante* and, if so, whether that change is justified as a matter of law.

(07/23/02 Order at 13, 18–19.)

Based on the above-described concern with respect to the impact of the retraction of the 1979 letter, the Court ordered additional briefing on the question of whether the final decision of the Secretary, which included the statement regarding the recognition of the Delawares as a tribal entity eligible for funding, announced a new substantive policy.[1]

Thus, the remaining question before the Court is whether the Secretary correctly determined that the *status quo ante*, prior to the issuance of the 1979 letter, was as follows: "[T]he Delaware Tribe of Indians is a tribal entity recognized and eligible for funding and services from the Bureau of Indian Affairs by virtue of its status as an Indian Tribe." If so, the Secretary's final decision in September of 1996 did not constitute a declaration of new policy and therefore did not effect a substantive change in the *status quo ante*. The Delaware and the Secretary argue that the

---

1. In this regard, the Court observes that the initial notice published in the Federal Register on June 27, 1996, states in applicable part that "the Assistant Secretary has made a preliminary determination that the position of the Department stated in the 1979 letter should be retracted." The initial notice provides that "[t]he public has until July 29, 1996 to comment on this preliminary decision." By comparison, the final decision published in the Federal Register on September 27, 1996, states in applicable part that "the Assistant Secretary hereby retracts the letter of May 24, 1979[,]" and further states that "[n]otice is hereby given that the Delaware Tribe of Indians is a tribal entity recognized and eligible for funding and services from the Bureau of Indian Affairs by virtue of its status as an Indian Tribe."

Secretary's determination of the *status quo ante* prior to the issuance of the 1979 letter should be upheld. For the reasons set forth below, the Court agrees.

## II

■ As noted above, the issue currently before the Court is the Secretary's determination that, pursuant to a return to the *status quo ante*, "the Delaware Tribe of Indians is a tribal entity recognized and eligible for funding and services." The scope of a district court's review of an administrative agency decision is governed by section 706 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.* Section 706 of the APA provides that a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "Under the APA, we review agency action de novo to determine whether it was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *City of Albuquerque v. Browner*, 97 F.3d 415, 424 (10th Cir.1996) (quoting section 706(2)(A) of the ·APA). The "essential function" of judicial review of an agency action is "a determination of (1) whether the agency acted within the scope of its authority, (2) whether the agency complied with prescribed procedures, and (3) whether the action is otherwise arbitrary, capricious or an abuse of discretion." *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1574 (10th Cir.1994). Under the arbitrary and capricious standard, the objective of the Court's inquiry is to determine "whether there has been a clear error of judgment." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

## III

At the outset, the Court finds that the Secretary is entitled to great deference in her determination that, prior to the issuance of the 1979 letter, the Delaware was a federally recognized sovereign entity entitled to direct government relations with the United States. The authorities supporting such deference were discussed at length in the Order and will not be rehearsed here. The Court finds that other authorities also compel the Court to resolve any question in favor of the Secretary's determination in this case.

■ It is well settled that issues involving government-to-government relations with Indian tribes are political questions inappropriate for judicial decision. As stated by the Supreme Court in *United States v. Holliday*, 70 U.S. (3 Wall.) 407, 419, 18 L.Ed. 182 (1865), "It is the rule of this court to follow the action of the executive and other political departments of the government, whose more special duty it is to determine such affairs. If by them those Indians are recognized as a tribe, this court must do the same." In *United States v. Sandoval*, 231 U.S. 28, 46–47, 34 S.Ct. 1, 58 L.Ed. 107 (1913), the Supreme Court limited this judicial deference, but only in situations in which the government acted arbitrarily in declaring a community or body of people an Indian tribe.

Similarly, the Court in *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), noted that cases questioning the status of Indian tribes are "representative" of political controversies sometimes inappropriate for judicial resolution, but that courts could strike down any "heedless extension" of that label. *Id.* at 216–17, 82 S.Ct. 691. As stated in Felix Cohen's *Handbook of Federal Indian Law*, "[T]he courts have said that it is up to Congress and the Executive to determine whether a tribe exists." Felix Cohen, *Handbook of*

*Federal Indian Law*, at 268 (1942). *See also Western Shoshone Business Council v. Babbitt*, 1 F.3d 1052, 1057 (10th Cir. 1993) ("The judiciary has historically deferred to executive and legislative determinations of tribal recognition."); *Cherokee Nation v. Babbitt*, 117 F.3d 1489, 1496 (D.C.Cir.1997) ("Whether a group constitutes a 'tribe' is a matter that is ordinarily committed to the discretion of Congress and the Executive Branch, and courts will defer to their judgment."). This line of authority showing deference to actions of the executive with respect to Indian tribes directly applies to the Secretary's 1996 reconsideration, after notice and comment, of the Secretary's 1979 position in light of the historical government-to-government relationship between the United States and the Delaware until 1979.

IV

■ The Court finds not only that the Secretary's determination is entitled to deference, but also that it has ample support in the law. The Cherokee rely heavily on *Cherokee Nation v. Journeycake*, 155 U.S. 196, 15 S.Ct. 55, 39 L.Ed. 120 (1894), and *Delaware Indians v. Cherokee Nation*, 193 U.S. 127, 24 S.Ct. 342, 48 L.Ed. 646 (1904). Citing these cases, the Cherokee assert that, under the 1867 Agreement, the Delaware elected to proceed in accordance with "Option 1" of Article 15 of the 1866 Treaty and therefore have abandoned their tribal organization. The Court finds that the Cherokee's reliance on these cases is misplaced. As the D.C. Circuit stated in *Cherokee Nation v. Babbitt*, "Neither *Journeycake* nor *Delaware Indians* explicitly expressed whether the Delaware settled in Cherokee territory pursuant to the first or second provision of Article 15." *Cherokee Nation v. Babbitt*, 117 F.3d at 1500.

Instead, the Court directs its attention to more recent authority, specifically the 1972 Appropriations Act, 25 U.S.C. §§ 1291–1297 ("1972 Appropriations Act"), and the Supreme Court's decision in *Delaware Tribal Business Committee v. Weeks*, 430 U.S. 73, 97 S.Ct. 911, 51 L.Ed.2d 173 (1977). The Court finds that these authorities provide a more sound legal basis than the two cases cited by the Cherokee for determining the *status quo* prior to the issuance of the 1979 letter.

In October of 1972, Congress passed the 1972 Appropriations Act, an act appropriating funds to the Delaware Tribe of Indians and the Absentee Delaware Tribe of Western Oklahoma to satisfy an Indian Claims Commission award. *See* 25 U.S.C. §§ 1291–1297; AR vol. II, at 0205. The 1972 Appropriations Act provides, in pertinent part:

> The funds ... shall be placed to the credit of the *Delaware Tribe of Indians* in the United States Treasury and shall be used in the following manner: 90 per centum of such funds shall be distributed in equal shares to each person enrolled pursuant to subsection 2(c)(1) of this title, and 10 per centum shall remain to the credit of the tribe in the United States Treasury and may be advanced, expended, invested, or reinvested *for any purpose that is authorized by the tribal governing body: Provided,* That the Secretary of the Interior shall not approve the use of the funds remaining to the credit of the tribe until the tribe has organized a legal entity which in the judgment of the Secretary adequately protects the interests of its members.

25 U.S.C. § 1294(b); AR vol. II, at 0059–60 (emphasis added). Following passage of the 1972 Appropriations Act, the Bureau of Indian Affairs ("BIA") reviewed the 1958 Bylaws and recommended that the

Tribe adopt membership criteria to comply with the distribution requirements of the Act.[2] AR vol. II, at 0060. In a General Council meeting, the Delaware Tribe amended its bylaws to include such criteria, and the BIA approved the amendments on September 30, 1974. *Id.* In 1975, the BIA certified that the Delaware Tribe's amended bylaws provided "the legal entity which in the judgment of the Secretary of Interior adequately protects the interest of the Delaware Tribe of Indians pursuant to the [1972 Appropriations Act]." AR vol. IV, at 0076.

In 1977, the Supreme Court explicitly and unambiguously declared that the Delaware Tribe of Indians was a federally recognized Indian tribe in *Delaware Tribal Business Committee v. Weeks*, 430 U.S. 73, 97 S.Ct. 911, 51 L.Ed.2d 173 (1977). *Weeks* involved claims by an unorganized group of Delaware descendants, the "Kansas Delawares," who were challenging the constitutionality of the 1972 Appropriations Act. The Kansas Delawares were descendants of those Delaware Indians who chose to remain in Kansas under Article 9 of the 1866 Delaware Treaty by "dissolv[ing] their relations with the tribe and becom[ing] citizens of the United States." *Id.* at 78. The Kansas Delawares alleged that their exclusion from the 1972 Appropriations Act resulted in the denial of equal protection in violation of the Due Process Clause of the Fifth Amendment. The Kansas Delawares argued that the Delaware Tribe of Indians was recognized only for claims purposes. The BIA argued that the Delaware Tribe of Indians was a federally recognized tribe for all purposes and that, under the 1867 Articles of Agreement, the Delaware Tribe was permitted and did "maintain their tribal laws, customs, and usages." AR vol. II, at 0047–48. The Supreme Court held, in an 8–1 decision, that the 1972 Appropriations Act was constitutional with respect to the Delaware Tribe of Indians and further held that "[d]espite their association with the Cherokees, these Indians, called the 'Cherokee–Delawares' in this suit, have over the years maintained a distinct group identity, *and they are today a federally recognized tribe.*" *Weeks*, 430 U.S. at 77, 97 S.Ct. 911 (emphasis added).

## V

The Court finds it unnecessary to consider further the long history of relations between the Cherokee and the Delaware. The question is whether the Secretary effected a substantive change in the *status quo ante* in stating that the Delaware is a federally recognized sovereign tribe. The Court finds that the Secretary did not effect such a substantive change. The Secretary, who is entitled to great deference, has determined that, as a result of the withdrawal of the 1979 letter and return to the *status quo ante*, the Delaware is a federally recognized sovereign tribe. The Congress has acted in a manner consistent with this determination. The Supreme Court has declared the Delaware to be a federally recognized sovereign tribe. These actions and authorities properly control the Court's decision here.

---

**2.** Following passage of the 1972 Appropriations Act, the BIA was unable to locate the 1958 Bylaws in its files. This caused some confusion on the part of the BIA as to whether the Tribe had sufficient governmental organization to distribute the funds in accordance with the 1972 Appropriations Act. However, in 1974, the BIA informed the Tribe that

"[w]e have since located the file ... and find that it was approved by the [BIA]. The Delaware Tribal Business Committee ... would appear to meet the requirement found in the [1972 Appropriations Act] ... that a legal entity exist that adequately protects the interests of its members." AR vol. I, at 0023–24; *see also id.* vol. II, at 0060–61.

Applying principles of deference and the arbitrary and capricious standard of review, the Court hereby sustains the decision of the Secretary in this case. Notice of this decision, published in the Federal Register on September 27, 1996, is hereby upheld in all respects. Accordingly, the Court finds that, pursuant to the Secretary's withdrawal of the 1979 letter and the return to the *status quo ante*, the Delaware Tribe of Indians is a federally recognized sovereign tribe.

IT IS SO ORDERED.