**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| TIMBISHA SHOSHONE TRIBE; JOSEPH KENNEDY; ANGELA BOLAND; GRACE GOAD; ERICK MASON; HILLARY FRANK; MADELINE ESTEVES; PAULINE ESTEVES, *Plaintiffs-Appellants*, <br><br> v. <br><br> U.S. DEPARTMENT OF THE INTERIOR; LARRY ECHO HAWK; AMY DUTSCHKE; TROY BURDICK; MARGARET CORTEZ; WILLIAM EDDY; GEORGE GHOLSON; CLYDE NICHOLS; EARL FRANK; DONALD LAVERDUE; BUREAU OF INDIAN AFFAIRS, *Defendants-Appellees*. | No. 13-16182 <br><br> D.C. No. 2:11-cv-00995-MCE-DAD <br><br><br> OPINION |

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Jr., Chief District Judge, Presiding

Argued and Submitted January 4, 2016
San Francisco, California

Filed May 27, 2016

Before: J. Clifford Wallace and Diarmuid F. O'Scannlain, Circuit Judges and Marilyn L. Huff,[*] District Judge.

Opinion by Judge Wallace

## SUMMARY[**]

### Mootness / Tribal Affairs

The panel dismissed, as moot, an appeal from the district court's dismissal of a case challenging the Department of the Interior's recognition of the election results for leadership authority over the Timbisha Shoshone Tribe.

The panel held that the Tribe's recent adoption of a new constitution, which overhauled tribal membership requirements, mooted the appeal because there was no chance that a remand to the Bureau of Indian Affairs would make any difference whatsoever in the election results.

### COUNSEL

Jeffrey R. Keohane (argued), George Forman, Jay B. Shapiro, and Kimberly A. Cluff, San Rafael, California, for Plaintiffs-Appellants.

---

[*] The Honorable Marilyn L. Huff, District Judge for the U.S. District Court for the Southern District of California, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Mary Gabrielle Sprague (argued), Katherine J. Barton, and John C. Cruden, Assistant Attorney General, Appellate Section, Environment & Natural Resources Division, United States Department of Justice, Washington, D.C., for Federal Defendants-Appellees.

James M. Birkelund (argued), Law Offices of James Birkelund, San Francisco, California; Mark A. Levitan, Sonora, California, for Tribal Council Defendants-Appellees.

**OPINION**

WALLACE, Senior Circuit Judge:

Since at least 2002, several competing factions have vied for leadership authority over the Timbisha Shoshone Tribe. Faced with these competing claims of authority, the Department of Interior (Department) reviewed the electoral history and recognized one of the factions for a limited time until the Tribe could hold a special election to choose new leadership. After the Department's decision, the Tribe conducted a special election resulting in new leadership. The Department recognized the election's result because it concluded that the Tribe conducted the election in compliance with tribal law.

The defeated faction argues that the Department erred in several of its decisions by failing to comply with the Administrative Procedures Act, 5 U.S.C. § 500–596, in a variety of ways. We need take no position on those issues, however, if we conclude this appeal is now moot. We conclude that it is. Therefore, we lack jurisdiction to rule on the merits and, accordingly, dismiss this appeal.

I.

For many Indian tribes, federal recognition is of great importance because "[s]uch status is a 'prerequisite to the protection, services, and benefits of the Federal government available to Indian tribes by virtue of their status as tribes.'" AMERICAN INDIAN LAW DESKBOOK § 2:6 (quoting 25 C.F.R. § 83.2 (1994)). For instance, federally recognized tribes may receive "assistance for such purposes as corrections, child welfare, education, and fish and wildlife and environmental programs." *Id.* Moreover, only federally recognized tribes may operate gambling facilities under the federal Indian Gaming Regulatory Act. *See Big Lagoon Rancheria v. California*, 789 F.3d 947, 949–50 (9th Cir. 2015) (en banc).

The Timbisha Shoshone Tribe received federal recognition as a sovereign Indian nation in 1983. *See* Timbisha Shoshone Homeland Act, Pub. L. No. 106-423, 114 Stat. 1875 (2000). The Tribe's organizational document is a written constitution, which allocates governmental power among three distinct branches: a General Council, a Tribal Council, and a Tribal Judiciary.[1] The General Council is the Tribe's supreme governing body but has delegated some of its authority to the Tribal Council. The Tribal Council consists of five people, each of whom holds office for two years. The Tribe holds general elections for the Tribal Council every year in November, but the Tribal Council officers' terms of office are staggered so that not every seat

---

[1] The Tribe adopted a new constitution in 2014 and it contains some significant changes from the earlier version. But in describing the background of this case, we refer to the pre-2014 constitution because that was the document under which the parties operated during the relevant background events.

is up for election every year. A Tribal Council seat may also become vacant if a member resigns, is removed from office, or is recalled from office.

Various rival factions within the Tribe have been vying for control over the Tribal Council for over a decade. *See, e.g.*, *Timbisha Shoshone Tribe v. U.S. Dep't of the Interior*, No. 2:11-cv-00995-MCE-DAD, 2011 WL 1883862 (E.D. Cal. May 16, 2011); *Timbisha Shoshone Tribe v. Bureau of Indian Affairs*, No. CIVS-03-404 WBS/GGH, 2003 WL 25897083 (E.D. Cal. April 10, 2003). Since the inception of these leadership disputes, Joseph Kennedy had headed one faction, and we refer generally to the various constituents he has led over the years as the Kennedy Group.

While it is not the start of the factional disputes, we begin our discussion of this case with the Tribe's November 2006 elections, where Kennedy was elected Chairman of the Tribal Council. At an August 2007 Tribal Council meeting, Kennedy charged two other Council officers with committing misconduct while in office. The two charged officers, along with another Council officer, then left the meeting. These three were members of a group we refer to generally as the Beaman Group. After the Beaman Group members left, Kennedy and the other remaining Council officer purported to fill one of the vacant seats. Meanwhile, the Beaman Group later adopted resolutions purporting to act as the Tribe's leadership.

At the time of the next annual Tribal Council election in November 2007, both the Kennedy Group and the Beaman Group held elections, which unsurprisingly resulted in each group winning its own election. Troy Burdick, the Superintendent of the Central California Agency of the

Bureau of Indian Affairs (which is an agency within the Department of Interior), initially refused to recognize either election, but he later reversed course and recognized the Kennedy Group's election results. Superintendent Burdick based the reversal on a January 2008 General Council meeting that Kennedy organized in which the General Council adopted resolutions purporting to ratify the results of the Kennedy Group's election. The Beaman Group appealed Superintendent Burdick's decision.

The newly recognized Kennedy Group later reviewed the Tribe's membership rolls and disenrolled 74 members who allegedly did not meet the membership criteria. George Gholson was one of those disenrolled members. Around the same time the Kennedy Group was performing its membership-roll review, Gholson organized a special meeting of the General Council, which ended with Kennedy being recalled as Chairman of the Tribal Council and Gholson being placed in the position. Shortly thereafter, Superintendent Burdick issued a decision recognizing Gholson as the Council's Chairman. Yet, less than a month later, Superintendent Burdick changed course and issued a decision recognizing the November 2006 Tribal Council.

In February 2009, Dale Morris, the Regional Director of the Bureau of Indian Affairs took up the Beaman Group's appeal of Superintendent Burdick's decision recognizing the Kennedy Group's November 2007 election. Director Morris reversed the decision, concluding that the resolutions adopted by the General Council in January 2008 exceeded its authority and violated principles of due process. Director Morris declined to recognize the Kennedy Group, the Beaman Group, or the Gholson Group, and decided to

recognize instead the Tribal Council as it was constituted following the November 2006 elections.

The Kennedy Group appealed from Director Morris's decision to then-Assistant Secretary of the Bureau of Indian Affairs, Larry Echo Hawk. Secretary Echo Hawk issued a decision on March 1, 2011, in which he made two holdings. First, he affirmed Director Morris's decision rejecting the General Council's January 2008 resolutions that purportedly ratified the Kennedy Group's November 2007 Tribal Council election. Secretary Echo Hawk held that those resolutions contravened the Tribe's constitution because the General Council attempted to replace Beaman as a member of the Tribal Council when Beaman had not resigned, been recalled, or removed from office. Second, given that there was no validly elected Tribal Council, Secretary Echo Hawk recognized the Gholson Group as the Tribal Council "for the limited time of 120 days . . . for the limited purpose of carrying out essential government-to-government relations and holding a special election that complies with tribal law." He supported his recognition of the Gholson Group rather than the Kennedy Group on two grounds: (1) more votes were cast in the Gholson Group election than the Kennedy Group election (137 to 74), and (2) the Kennedy Group's exclusion of the 74 members it disenrolled from voting rendered its election "facially flawed" because the disenrollments did not comply with either tribal law or federal law.

Following Secretary Echo Hawk's decision, the Gholson Group held a Tribal Council election. Gholson won election as the Council's Chairperson, receiving 159 votes, while Kennedy received only 60. The Tribe then asked the Department to recognize the election results. Assistant Secretary Echo Hawk did so by issuing a second decision in

which he concluded that "the special election reflects the will of the Tribe."

The Kennedy Group challenged Secretary Echo Hawk's decisions in federal district court, arguing that Secretary Echo Hawk's reliance on certain principles of administrative law was incorrect in a variety of ways. As a remedy, the Kennedy Group did not ask the district court to place it in power, but instead asked the district court to remand Secretary Echo Hawk's decisions "for further proceedings consistent with federal law."

The district court dismissed the Kennedy Group's complaint, concluding that, under Rule 19 of the Federal Rules of Civil Procedure, the Tribe and the 2011-elected Council members (all of whom were members of the Gholson Group) were "indispensable parties that enjoy sovereign immunity." Essentially, the district court ruled that for the Kennedy Group to present its claims, it needed to name both the Tribe and the Tribal Council members as defendants (in addition to the Department). But because neither had agreed to waive sovereign immunity, they could not be joined as defendants, and thus the court found it necessary to dismiss the action.

Following the district court's dismissal of the Kennedy Group's action on April 9, 2013, the Tribe adopted a new constitution in 2014. The new constitution made changes to the original document, but most importantly for our purposes, the new constitution changes the criteria for membership in the Tribe. Under the new constitution, a person is a member of the Tribe if he or she meets any of the following criteria: (a) is on a certain 1936 list of people with some Shoshone blood, (b) is on a 1978 genealogy roll, (c) is a lineal

descendant of anyone qualifying under subsections (a) or (b), and is at least one-fourth Indian (one-sixteenth of which must be Shoshone blood), or (d) persons of Indian blood who are adopted. It is undisputed that the 74 people that the Kennedy Group disenrolled in 2008 would qualify as Tribal members under the new constitution. The new constitution was submitted for a Tribal vote by the Bureau of Indian Affairs. The vote was 63 in favor of the new constitution, 22 against, and 1 spoiled ballot. In certifying the election results, the Bureau observed that even if all the votes of members that Kennedy Group disputed as qualifying for membership were ignored, the yes votes would have still won a majority. The new constitution is still in force and the Kennedy group has conceded that "the 2014 Constitution is not before" our panel.

## II.

Before addressing the merits of the Kennedy Group's arguments, we must assure ourselves that we have jurisdiction. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) ("[E]very federal appellate court has a special obligation to satisfy itself . . . of its own jurisdiction." (internal quotation marks omitted)). Our obligation to do so stems from Article III of the Constitution, which confines "[t]he judicial Power" to deciding cases and controversies. U.S. CONST. art. III, § 2, cl. 1.

The case or controversy requirement is not a rule that applies only at the outset of litigation. Instead, the Supreme Court has explained that "[t]he rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974). Where an actual controversy does not persist throughout litigation, "[a] case

becomes moot." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013); *Cook Inlet Treaty Tribes v. Shalala*, 166 F.3d 986, 989 (9th Cir. 1999). The mootness doctrine does not turn on whether the plaintiff continues to believe that some unlawful conduct occurred. *Already, LLC*, 133 S. Ct. at 727 (explaining that a case may still be moot regardless of "how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit"). Rather, "the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Id.* (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (2009)). Thus, we have held that "[i]f there is no longer a possibility that an appellant can obtain relief for his claim, that claim is moot and must be dismissed for lack of jurisdiction." *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 521 (9th Cir. 1999); *see Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013) (framing the mootness inquiry by asking whether it has become "impossible for a court to grant any effectual relief whatever to the prevailing party" (internal quotation marks omitted)).

In cases where a plaintiff seeks declaratory relief, such as this one, the test for mootness is "whether the fact alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005) (en banc) (internal quotation marks omitted). Or, "[s]tated another way, the central question before us is whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief." *Id.* (internal quotation marks omitted).

With that legal background, we now examine whether an "actual controversy" remains in this case. The Department argues that the Tribe's adoption of a new constitution in 2014 moots this appeal.

As explained above, in 2014 the Bureau of Indian Affairs conducted an election on a proposed constitution for the Tribe. The proposed constitution obtained a substantial majority of favorable votes (63 in favor versus only 22 opposed). Given the Kennedy Group's concession that the validity of the new constitution is not at issue in this case, we assume its validity. *See* Reply Br. at 5; Oral Arg. at 5:35 (stating that the Kennedy Group concedes that "the facts of the constitution are not before this court"). Since the new constitution remains in effect, the issue then is whether it precludes us from being able to provide the Kennedy Group with "meaningful relief," thus rendering the case moot. *Gator.com Corp.*, 398 F.3d at 1129.

Secretary Echo Hawk's first decision hinged, in part, on his conclusion that "the [2007] Kennedy election was facially flawed by its exclusion of certain Tribe members." He explained that any decision to "bar[]" valid members "from voting fatally invalidates an election"; the Kennedy Group does not dispute this legal premise. This flaw led Secretary Echo Hawk to recognize the Gholson Group for the limited purpose of holding a special election. The Kennedy Group has repeatedly argued that Secretary Echo Hawk's analysis on this point was mistaken because, it asserts, the 74 Tribe members the Group excluded at its November 2007 election were not actually members of the Tribe under the prior constitution. But this argument misses the point. Even if we assume that the Kennedy Group was correct that the 74 excluded individuals failed to meet the Tribe's membership

qualifications (and so assume that Secretary Echo Hawk erred in reasoning the opposite), the new constitution overhauled those membership requirements. Under the new constitution's membership framework, there is no dispute that the 74 disenrolled individuals qualify for Tribal membership. Thus, were we to remand for the Bureau of Indian Affairs to reconsider its decision, there would be no possibility whatsoever that the agency would change its reasoning as to the disenrolled individuals because those people clearly qualify for Tribal membership under the new constitution.

The Kennedy Group argues that the reasoning we apply above is "circular" because it allows purportedly ineligible members to vote on a new constitution which retroactively cures their membership defects. In short, the group argues that the new constitution is ineffective because unqualified individuals voted in favor of it, so it cannot possibly moot this case. But this argument ignores the fact that the new constitution received a substantial majority of votes in its favor, the Bureau of Indian Affairs certified it, and the Kennedy Group has conceded that its validity "is not before" us. Given all of that, on what authority can we decide the new constitution is invalid? Our case law certainly does not support doing so, since we have on many occasions cautioned against intermeddling in tribal affairs. *See, e.g.*, *Williams v. Gover*, 490 F.3d 785, 791 (9th Cir. 2007) (observing that a prior case and "its predecessors establish that [a] tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community" (internal quotation marks omitted)). Moreover, as the Bureau of Indian Affairs observed, even if we accepted the Kennedy Group's argument that the unqualified individuals who voted in favor of the new

constitution should not have been able to vote, the new constitution still would have won a majority.

Thus, this is a moot case because a remand by us to the Bureau of Indian Affairs to reconsider Secretary Echo Hawk's decisions would serve no purpose. Even if the agency disagreed with Secretary Echo Hawk's reasoning under the prior constitution, it would have to apply the membership criteria in the new constitution, which would lead it to conclude that the Kennedy Group's exclusion of 74 members from voting in its November 2007 election rendered the election unenforceable.

Because we conclude that the Tribe's recent adoption of a new constitution moots this appeal, we will not reach the Department's alternative arguments, including that intervening tribal elections moot this appeal and that the Kennedy Group lacks standing to challenge the Department of Interior's so-called "Rollback Rule." Further, because this appeal is now moot, we cannot address the Kennedy Group's argument that the district court abused its discretion in dismissing the Group's action under Rule 19 of the Federal Rules of Civil Procedure.

III.

Article III of the Constitution limits federal courts to deciding live cases or controversies. Under that constitutional mandate, we must dismiss a case if "there is no longer a possibility that an appellant can obtain relief for his claim." *Ruvalcaba*, 167 F.3d at 521. That rule forecloses our ability

to reach the merits in this case, because there is no chance that a remand to the Bureau of Indian Affairs would make any difference whatsoever.

**APPEAL DISMISSED.**