**FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

FRANK'S LANDING INDIAN
COMMUNITY, a federally-
recognized self-governing
dependent Indian community,
*Plaintiff-Appellant*,

v.

NATIONAL INDIAN GAMING
COMMISSION; UNITED STATES
DEPARTMENT OF THE
INTERIOR; JONODEV
CHAUDHURI, in his official
capacity as Chairman of the
National Indian Gaming
Commission; TARA KATUK
MACLEAN SWEENEY, in her
official capacity as Assistant
Secretary of the Interior
Indian Affairs, United States
Department of the Interior;
DAVID BERNHARDT, in his
official capacity as Acting
Secretary of the Interior,
*Defendants-Appellees*.

No. 17-35368

D.C. No.
3:15-cv-05828-BHS

OPINION

Appeal from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding

Argued and Submitted October 11, 2018
Seattle, Washington

Filed March 12, 2019

Before: N. Randy Smith and Morgan Christen, Circuit
Judges, and Robert E. Payne,[*] District Judge.

Opinion by Judge Christen

---

**SUMMARY**[**]

**Tribal Matters**

The panel affirmed the district court's summary judgment entered in favor of the U.S. Department of the Interior, its Secretary, and Assistant Secretary of Indian Affairs, in an action challenging the Department of the Interior's determination that Frank's Landing Indian Community is ineligible for gaming for purposes of the Indian Gaming Regulatory Act ("IGRA").

---

[*] The Honorable Robert E. Payne, United States District Judge for the Eastern District of Virginia, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that IGRA clearly and unambiguously required federal recognition by the Secretary of the Interior before a tribe may qualify to participate in Indian gaming. The panel also held that when Congress amended the Frank's Landing Act in 1994, it did not separately authorize the non-federally recognized Frank's Landing Indian Community to engage in Class II gaming. The panel held that the Department of the Interior correctly concluded that the Community was not eligible to engage in IGRA gaming.

**COUNSEL**

Scott David Crowell (argued), Crowell Law Office-Tribal Advocacy Group, Sedona, Arizona; Bryan T. Newland, Fletcher Law PLLC, East Lansing, Michigan; Alan S. Middleton, Law Offices of Alan S. Middleton PLLC, Lake Forest Park, Washington; for Plaintiff-Appellant.

Kevin W. McArdle (argued), Mary Gabrielle Sprague, and Devon Lehman McCune, Environment and Natural Resources Division; Eric Grant, Deputy Assistant Attorney General; Jeffrey H. Wood, Acting Assistant Attorney General; United States Department of Justice, Washington, D.C.; Samuel E. Ennis, Office of the Solicitor, Department of the Interior, Washington, D.C.; for Defendants-Appellees.

**OPINION**

CHRISTEN, Circuit Judge:

Frank's Landing Indian Community (Community) appeals the district court's order granting summary judgment in favor of appellees Department of the Interior, its Secretary, and the Assistant Secretary–Indian Affairs. The Community, which is not a federally recognized tribe, challenges Interior's determination that it is ineligible for gaming for purposes of the Indian Gaming Regulatory Act, (IGRA), 25 U.S.C. §§ 2701–2721. The Community argues that its unique status, recognized and defined in the Frank's Landing Act[1] and the 1994 amendments to that Act,[2] renders it eligible to engage in class II gaming.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm the district court's judgment. Reviewing Interior's decision under the Administrative Procedure Act (APA), we conclude the agency's determination was correct. First, we hold that IGRA clearly and unambiguously requires federal recognition by the Secretary of the Department of the Interior before a tribe may qualify to participate in Indian gaming. Second, we hold that the Frank's Landing Act does not authorize the Community to engage in class II gaming.

---

[1] Pub. L. No. 100-153, § 10, 101 Stat. 886, 889.

[2] Pub. L. No. 103-435, § 8, 108 Stat. 4566, 4569–70.

## BACKGROUND

### A.  Statutory Background

Adopted in 1987, the Frank's Landing Act originally provided as follows:

> The Frank's Landing Indian Community in the State of Washington is hereby recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians and is recognized as eligible to contract, and to receive grants, under the Indian Self-Determination and Education Assistance Act for such services, but the proviso in section 4(c) of such Act (25 U.S.C. 450b(c)) shall not apply with respect to grants awarded to, and contracts entered into with, such Community.

Pub. L. No. 100-153, § 10, 101 Stat. 889.

In 1988, Congress enacted IGRA to provide "a statutory basis for the operation and regulation" of Indian gaming. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 48 (1996). IGRA created the National Indian Gaming Commission (Gaming Commission), the federal agency that regulates three classes of gaming on Indian lands.  *See* 25 U.S.C. §§ 2703(6)–(8), 2704, 2710.  To conduct class II gaming, an "Indian tribe" must adopt a "tribal ordinance" concerning the regulation of class II gaming, and submit the ordinance to the Chair of the Gaming Commission for approval.  25 U.S.C. § 2710(b).  IGRA defines "Indian tribe" as follows:

> [A]ny Indian tribe, band, nation, or other organized group or community of Indians which—
>
>> (A) is recognized as eligible by the Secretary for the special programs and services provided by the United States to Indians because of their status as Indians, and
>>
>> (B) is recognized as possessing powers of self-government.

*Id.* § 2703(5).

In 1994, Congress amended the Frank's Landing Act so that it now provides:

> (a) Subject to subsection (b), the Frank's Landing Indian Community in the State of Washington is hereby recognized—
>
>> (1) as eligible for the special programs and services provided by the United States to Indians because of their status as Indians and is recognized as eligible to contract, and to receive grants, under the Indian Self-Determination and Education Assistance Act for such services, but the proviso in section 4(c) of such Act (25 U.S.C. 450b(c)) shall not apply with respect to grants awarded to, and contracts entered into with, such Community; and

(2) as a self-governing dependent Indian community that is not subject to the jurisdiction of any federally recognized tribe.

(b)(1) *Nothing in this section may be construed to alter or affect the jurisdiction of the State of Washington* under section 1162 of title 18, United States Code.

(2) *Nothing in this section may be construed to constitute the recognition by the United States that the Frank's Landing Indian Community is a federally recognized Indian tribe.*

(3) *Notwithstanding any other provision of law, the Frank's Landing Indian Community shall not engage in any class III gaming activity* (as defined in section 3(8) of the Indian Gaming Regulatory Act of 1988 (25 U.S.C. 2703(8))).

Pub. L. No. 103-435, 108 Stat. 4566, 4569–70 (emphasis added).

When Congress enacted the Frank's Landing Act in 1987, it had not yet enacted IGRA and thus it could not have considered the Community's tribal status or gaming rights for purposes of IGRA. By the time the Frank's Landing Act was amended in 1994, IGRA was well established, as was the process for identifying which groups qualify as federally recognized tribes.

## B. Federal Recognition

To provide context for our decision that the Community is ineligible to participate in Indian gaming, we explain what it means to be a federally recognized tribe.[3]  "Federal recognition" of an Indian tribe is a legal term of art meaning that the federal government acknowledges as a matter of law that a particular Indian group has tribal status. *See* H.R. Rep. No. 103-781, at 2 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 3768; Felix Cohen, *Cohen's Handbook of Federal Indian Law* § 3.02[3], at 134 (Nell Jessup Newton ed., 2012) (hereinafter *Cohen's Handbook*).    Federal recognition establishes a government-to-government relationship between the United States and the recognized tribe as a "domestic dependent nation," and requires the Secretary to provide "a panoply of benefits and services" to the tribe and its members. *See Cohen's Handbook*, § 3.02[3], at 134 (internal quotation marks omitted).

A group of Indians may achieve federal recognition in three ways: (1) by Congressional act; (2) by Secretarial acknowledgment[4]; or (3) by a decision of a United States court.  *See* Federally Recognized Indian Tribe List Act of 1994, Pub. L. No. 103-454; *United States v. Zepeda*, 792 F.3d 1103, 1114 (9th Cir. 2015).  As required by the Federally

---

[3] The term "federal recognition" is relevant to understanding the significance of: (1) IGRA's requirement that an Indian tribe must be "recognized as eligible by the Secretary" for special programs and services; and (2) the Frank's Landing Act's provision that the Community is not a federally recognized Indian tribe.

[4] "The terms 'recognize' and 'acknowledge' are often used interchangeably." *Cohen's Handbook*, § 3.02[3], at 134 n.21.

Recognized Indian Tribe List Act of 1994 (List Act), 25 U.S.C. § 5131, the Secretary of the Interior publishes an annual list of all federally recognized tribes that have obtained recognition through any one of these three means. *See Zepeda*, 792 F.3d 1103 at 1114. The Community has never petitioned the Secretary for inclusion on the annual list, and it concedes that it has not been federally recognized under any of these three pathways.

## C. The Community's Efforts to Engage in Class II Gaming

The Community submitted a class II gaming ordinance to the Gaming Commission for review and approval in December of 2014. In March of 2015, the Assistant Secretary–Indian Affairs, acting on behalf of Interior, issued a memorandum to the Chair of the Gaming Commission concluding that the Community did not qualify as an Indian tribe for purposes of IGRA because it is not federally recognized and does not appear on the annual list of recognized tribes the Secretary publishes pursuant to the List Act. The Assistant Secretary opined that the Gaming Commission could rely on this annual list to determine whether an entity is a federally recognized Indian tribe because the list is intended to be exhaustive, because it offers transparency surrounding which groups of Indians are eligible for gaming pursuant to IGRA, and because it provides a "bright line" rule that preserves government resources. The Solicitor of the Department of the Interior also concluded that the Community was not an Indian tribe for purposes of IGRA.

Relying on Interior's determination, the Chair of the Gaming Commission concluded that the Commission was without authority to review the Community's gaming ordinance. The Community's requests for reconsideration were denied, and the Community filed suit in district court. The district court dismissed the claims against the Gaming Commission and its Chair for failure to state a claim. Thereafter, the court granted summary judgment in favor of the remaining defendants. The district court reasoned that IGRA and the Frank's Landing Act, read together, are ambiguous regarding whether Congress intended to authorize the Community to engage in class II gaming, but it concluded, pursuant to *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–44 (1984), that defendants reasonably interpreted these statutes. This appeal of the summary judgment order followed.

## STANDARD OF REVIEW

"We review de novo the district court's summary judgment ruling[ ], 'thus reviewing directly the agency's action under the [APA's] arbitrary and capricious standard.'" *Cty. of Amador v. United States Dep't of the Interior*, 872 F.3d 1012, 1020 (9th Cir. 2017) (quoting *Alaska Wilderness League v. Jewell*, 788 F.3d 1212, 1217 (9th Cir. 2015)), *cert. denied*, 139 S. Ct. 64 (2018).

## DISCUSSION

Interior determined that the Community is not entitled to conduct Indian gaming for purposes of IGRA because it is not federally recognized and does not appear on the annual list of recognized tribes the Secretary publishes pursuant to the List

Act.  Accordingly, the dispositive questions in this case are narrow: (1) whether an Indian group must be recognized by the Secretary in order to qualify as an "Indian tribe" for purposes of IGRA; and, if so, (2) whether the Frank's Landing Act nevertheless authorizes the Community to engage in class II gaming pursuant to IGRA.  To resolve these questions, we start with the definition of "Indian tribe" in IGRA, § 2703(5).  Because the Frank's Landing Act granted the Community some form of special status before Congress adopted IGRA, we also consider the Frank's Landing Act, both as originally adopted and as amended in 1994.

"We interpret [each] federal statute by ascertaining the intent of Congress and by giving effect to its legislative will." *Artichoke Joe's California Grand Casino v. Norton*, 353 F.3d 712, 720 (9th Cir. 2003) (internal quotation marks omitted). To resolve this appeal, "we need not decide whether *Chevron* deference (or any other level of deference) is appropriate, because we reach the same conclusion as Interior when we review the [interpretive questions] de novo." *Cty. of Amador*, 872 F.3d at 1021–22.

We hold that Congress intended federal recognition by the Secretary to be a prerequisite for inclusion in IGRA's definition of Indian tribe, and that when it amended the Frank's Landing Act in 1994, Congress did not separately authorize the non-federally recognized Community to engage in class II gaming.

### A. Congress Made Federal Recognition a Prerequisite for Indian Gaming.

IGRA states that an "Indian tribe . . . recognized as eligible by the Secretary for the special programs and services" may engage in class II gaming.  25 U.S.C. § 2703(5)(A); *see id.* § 2710(b)(1).  Our court has never squarely addressed the meaning of IGRA's Secretarial recognition requirement, though we have suggested that only federally recognized tribes may engage in Indian gaming. *See Artichoke Joe's*, 353 F.3d at 734 (stating that "only federally recognized tribes are covered" by IGRA, not individual Indians); *see also Timbisha Shoshone Tribe v. U.S. Dep't of Interior*, 824 F.3d 807, 809 (9th Cir. 2016) (observing that "only federally recognized tribes may operate gambling facilities under the federal [IGRA].")

IGRA's definition of "Indian tribe" includes "communit[ies] of Indians" that are "recognized as possessing powers of self-government."   25 U.S.C. § 2703(5)(B).  Interior does not challenge the Community's assertion that it is a self-governing community of Indians, but the parties part ways over how to interpret IGRA's requirement that an Indian tribe must be "recognized as eligible by the Secretary for the special programs and services provided by the United States to Indians because of their status as Indians[.]"  *Id.* § 2703(5)(A).

Interior points to IGRA's requirement that a tribe be recognized as eligible *by the Secretary*, and argues that no such recognition has been made for the Community.  The Community isolates IGRA's phrase "special programs and services provided by the United States to Indians because of

their status as Indians," and contends that it unambiguously includes the Community, because the Frank's Landing Act provides that it is eligible to participate in "special programs and services" specifically targeted to Indians. The Community argues that the phrase "recognized as eligible by the Secretary" is irrelevant to the task of determining whether the Community may engage in class II gaming because Congress has plenary power to legislate concerning Indian tribes, and the Secretary must accede to what the Community argues is a congressional directive in the Frank's Landing Act—that the Community is eligible for "special programs and services." The Community urges us to conclude that it is therefore eligible to participate in class II gaming.

We agree with the Community that the phrase "special programs and services provided by the United States to Indians because of their status as Indians" refers to eligibility to participate in federal programs specifically targeted to Indians. *See Hoopa Valley Indian Tribe v. Ryan*, 415 F.3d 986, 990–91 (9th Cir. 2005) (describing programs and services provided to Indians "because of their status as Indians" as "specifically targeted to Indians" (internal quotation marks omitted)); *Navajo Nation v. Dep't of Health & Human Servs.*, 325 F.3d 1133, 1138 (9th Cir. 2003) (en banc) (same). However, IGRA's additional phrase "recognized as eligible by the Secretary" is a key qualifier. On its face, this phrase means that the *Secretary* must recognize an Indian tribe as eligible for special programs and services. And, as we explain *infra*, the significance of Secretarial recognition in the context of federal Indian law means that a tribe is federally recognized and that it appears on the Secretary's annual list. *See generally F.A.A. v. Cooper*, 566 U.S. 284, 291–92 (2012) (observing the

"cardinal rule of statutory construction" that when "Congress employs a term of art, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken." (internal quotation marks omitted)); *Dolan v. U.S.P.S.*, 546 U.S. 481, 486 (2006) ("Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.").

The administrative process by which the Secretary federally recognizes an Indian tribe was set out in Interior's Part 83 regulations in 1978, long before the adoption of IGRA. *See* 43 Fed. Reg. 39,361 (Sept. 5, 1978). The Part 83 regulations established a "procedure and policy for acknowledging that certain American Indian tribes exist. Such acknowledgment of tribal existence by the Department [of the Interior] is a prerequisite to the protection, services, and benefits from the Federal Government available to Indian tribes." 43 Fed. Reg. at 39,362. The Part 83 regulations required the Secretary to publish "a list of all Indian tribes which are recognized and receiving services from the Bureau of Indian Affairs." *Id.* Inclusion on the Secretary's list signifies that a tribe has been federally recognized and is eligible to receive services from the Bureau. *Id.*

We assume Congress is knowledgeable about existing law pertinent to the legislation it enacts, *see South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 351 (1998), and the Part 83 regulations were longstanding by the time Congress enacted IGRA in 1988. Thus, we have no doubt about what Congress intended when it used the phrase "recognized as eligible by the Secretary" in IGRA; this phrase is

synonymous with federal recognition. *See Pit River Home & Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1094–96 (9th Cir. 1994) (concluding a tribe was not "recognized by the Secretary" because the tribe was not federally recognized in any statute or treaty, and was not listed pursuant to Part 83 regulations). Use of "recognized as eligible by the Secretary" in IGRA's definition of "Indian tribe" reflects Congressional intent to require formal Secretarial recognition as a prerequisite for gaming.[5]

Our conclusion that IGRA only applies to tribes recognized on the Secretary's annual list is consistent with

---

[5] The Community argues that *Native Village of Noatak v. Hoffman* supports its position. 896 F.2d 1157, 1160 (9th Cir. 1990), *rev'd on other grounds by Blatchford v. Native Village of Noatak and Circle Village*, 501 U.S. 775 (1991). There, in a different context, we said that "[i]f Congress has recognized the tribe, a fortiori the tribe is entitled to recognition and is in fact recognized by the Secretary of the Interior." *Id.* But the issue in *Noatak* was whether two Native Villages were entitled to bring suit in federal court pursuant to 28 U.S.C. § 1362; i.e., whether the villages were "Indian tribe[s] or band[s] with [] governing bod[ies] duly recognized by the Secretary of the Interior" *Id.* One of the villages had a governing body approved by the Secretary pursuant to 25 U.S.C. § 476, *id.*, and when the Native Villages filed their complaint in 1985, they were already included on the Secretary's annual List. *See* 48 Fed. Reg. 56,865–66 (Dec. 23, 1983). In contrast, the question here is whether the Community qualified as a tribe for purposes of IGRA. IGRA unambiguously requires recognition by the Secretary, and the Community concedes that it is not a federally recognized tribe. Further, Congress declared the Community eligible for "special programs and services" before IGRA was enacted, so it could not have intended the original Frank's Landing Act to bestow IGRA's benefits upon the Community. Congress did not take the opportunity to expand the Community's ability to participate in IGRA gaming when it amended the Frank's Landing Act in 1994.

the observations of other federal courts,[6] and we know of no court that has ruled otherwise. It is unsurprising that the particular interpretive question we address here has not been examined in our earlier caselaw; IGRA's plain language provides that an Indian tribe is one that is "recognized as eligible by the Secretary" for "special programs and services," and this type of recognition is typically determined by simply confirming whether an Indian group appears on the Secretary's annual list. In this case, the Community's status—as set forth in the Frank's Landing Act—is unique. We do not know of any other group with a comparable status, and neither does the Community.

Having reviewed the applicable statutory text and considering the sequence in which the related legislation was enacted, we conclude that Congress clearly and unambiguously intended federal recognition by the Secretary to be a prerequisite for inclusion in IGRA's definition of

---

[6] *See Wisconsin v. Ho-Chunk Nation*, 784 F.3d 1076, 1079 (7th Cir. 2015) ("IGRA divides all Indian gaming (that is, gambling run by federally recognized tribes) into three classes."); *Narragansett Indian Tribe v. Nat'l Indian Gaming Comm'n*, 158 F.3d 1335, 1337 (D.C. Cir. 1998) (noting that IGRA "permits federally recognized tribes to apply for Commission approval of gaming proposals."); *Passamaquoddy Tribe v. Maine*, 75 F.3d 784, 792 n.4 (1st Cir. 1996) (observing that "[IGRA] has no application to tribes that do not seek and attain formal federal recognition."); *Carruthers v. Flaum*, 365 F. Supp. 2d 448, 451, 466–67 (S.D.N.Y. 2005) (concluding that because the Unkechaug are not federally recognized, IGRA provides no exception to New York's general prohibition on gambling); *First Am. Casino Corp. v. E. Pequot Nation*, 175 F. Supp. 2d 205, 208 (D. Conn. 2000) ("Unless and until defendant obtains federal acknowledgment, its activities are not regulated by IGRA.").

"Indian tribe." IGRA does not authorize the non-federally recognized Community to engage in class II gaming.

## B. The Frank's Landing Act Does Not Authorize the Community to Engage in Indian Gaming.

Despite IGRA's requirement that an Indian tribe must be recognized by the Secretary, the Community argues that the Frank's Landing Act separately granted it permission to engage in class II gaming. Specifically, the Community argues that because Congress defined "Indian tribe" in IGRA with the "precise language" used in the Frank's Landing Act, Congress intended to authorize the Community to engage in class II gaming.

Both the 1987 Frank's Landing Act and the 1994 amended Act provide that the Community is:

> recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians and is recognized as eligible to contract, and to receive grants, under the Indian Self-Determination and Education Assistance Act for such services. . . .

Pub. L. No. 100-153, 101 Stat. 886, 889; § 10, Pub. L. No. 103-435, 108 Stat. 4566, 4569. Plainly, this language indicates that Congress intended the Community to be eligible for special programs and services by virtue of their status as Indians, and Congress made clear that it intended the Community would contract for, and receive grants pursuant to, the Indian Self-Determination and Education Assistance

Act. *See* Indian Self-Determination and Education Assistance Act, 25 U.S.C. § 5321(a)(1)(E) (providing that upon request, the Secretary shall enter into self-determination contracts that include programs "for the benefit of Indians because of their status as Indians[.]").  But neither the 1987 Frank's Landing Act nor the 1994 amendments contain IGRA's qualifying phrase signaling federal recognition, "recognized as eligible *by the Secretary*[,]" 25 U.S.C. § 2703(5) (emphasis added). Further, Congress underscored that the 1994 amendments were not intended to federally recognize the Community by specifying that "[n]othing in this section may be construed to constitute the recognition by the United States that the [Community] is a federally recognized Indian tribe."  Pub. L. No. 103-435, § 8, 108 Stat. 4569.

The Community argues that we should infer that Congress intended to allow it to engage in class I or II gaming because the amended Act only expressly prohibits the Community from engaging in class III gaming.  To support this argument, the Community invokes the rule that a statute should be construed so that no clause, sentence, or word is rendered superfluous, and argues that there would have been no need to expressly prohibit it from engaging in class III gaming if lack of federal recognition rendered it ineligible to participate in all IGRA gaming.  Interior responds that Congress would not choose such an indirect route to convey an easily expressed message, and that there is no indication that this class III provision means anything other than what it says—that notwithstanding any other provision of law, i.e., notwithstanding federal recognition at some future time, the Community is prohibited from engaging in class III gaming.

Like the district court, we read the amended Act's prohibition of class III gaming as an express limitation on the Community's class III gaming rights if it is ever federally recognized.  The words Congress used make this clear. Subsections (b)(1) and (b)(2) provide that "[n]othing in this section may be construed to" alter or affect the criminal jurisdiction of Washington under Public Law 280[7] or to constitute federal recognition of the Community.  Congress employed language with a much broader sweep when it drafted subsection (b)(3).  That subsection states "*[n]otwithstanding any other provision of law*" the Community shall not engage in class III gaming.  The Supreme Court recently observed that "[t]he ordinary meaning of 'notwithstanding' is 'in spite of,' or 'without prevention or obstruction from or by.'" *N.L.R.B. v. SW Gen., Inc.*, — U.S. —, 137 S. Ct. 929, 939 (2017) (quoting Webster's Third New International Dictionary 1545 (1986); Black's Law Dictionary 1091 (7th ed. 1999)).  The Court explained that the word "notwithstanding" demonstrates "which provision prevails in the event of a clash," *id.* (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 126–27 (2012)), and that a "notwithstanding" clause "confirms rather than constrains breadth." *Id.* at 940.

Accordingly, we read "notwithstanding" in subsection (b)(3) as a signal that the amended Act's broad prohibition on class III gaming shall prevail in the event of a conflict with "any other provision of law."  In contrast, the preface to subsections (b)(1) and (b)(2)—"[n]othing in this section"—constrains the reach of the amended Act with

---

[7] 18 U.S.C. § 1162.

respect to Public Law 280 and federal recognition. This variation in language reflects a deliberate choice, *see S.E.C. v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003) ("the use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words.").

The historical context of the Frank's Landing Act also confirms that the Community is not authorized to engage in gaming. On the same day Congress amended the Frank's Landing Act, November 2, 1994, *see* 108 Stat. 4566, 4569, it codified Interior's longstanding Part 83 practice of publishing a list of recognized tribes, *see* 108 Stat. 4791. As explained, the List Act directed the Secretary to annually publish "a list of all Indian tribes which the Secretary recognizes to be eligible for the special programs and services provided by the United States to Indians because of their status as Indians." 25 U.S.C. § 5131. Assuming, as we must, that Congress was knowledgeable about Interior's longstanding Part 83 regulations, IGRA's requirement that tribes be recognized by the Secretary, and the List Act's codification of the Secretary's annual list, it is conspicuous that Congress did not take the opportunity when it amended the Frank's Landing Act to specifically authorize the Community to engage in class II gaming. Indeed, Congress did just the opposite by unequivocally stating that the Frank's Landing Act amendments were not intended to confer federal recognition. *See* Pub. Law No. 103-435, 108 Stat. 4566, 4569.

In light of the express statement in the Frank's Landing Act that the Community is not a federally recognized tribe, the amended Act's broad limitation on class III gaming rights, and the context in which the Act was amended, we

conclude it is not susceptible to more than one reasonable interpretation. The Frank's Landing Act does not separately authorize the Community to engage in Indian gaming.

## CONCLUSION

Congress clearly and unambiguously intended federal recognition by the Secretary to be a prerequisite for participation in IGRA gaming. Congress did not separately authorize the non-federally recognized Community to engage in class II gaming by amending the Frank's Landing Act. Therefore, Interior correctly concluded that the Community was not eligible to engage in IGRA gaming and we affirm the district court's order granting summary judgment in favor of the appellees.

**AFFIRMED.**